## J. WOOLEY COAL COMPANY v. BRACKEN.

### [No. 4,362. Filed March 18, 1903.]

MINES.—*Death of Miner.—Negligence.—Special Finding.—Conflict with General Verdict.*—A complaint against a mining company for damages for negligently causing the death of plaintiff's husband alleged that the mine had been operated for many years, and the room where decedent was at work had become old, and the roof rotten and dangerous, and while decedent was at work, in the exercise of due care, the roof fell upon him, inflicting the injuries from which he died; that the mining boss had neglected to visit the working place and had failed properly to prop and timber the roof, and had allowed the mine at that point to become and remain unsafe. The jury found in answer to interrogatories that the mining boss had visited and examined the room where the accident occurred within two working days before the date of the injury; that there were props and timbers in the room not in use at the time of the accident that could have been used; that defendant had a sufficient supply of props and timbers near for use, and that they were always furnished when called for by the men; that defendant did not know and could not have known by an examination that the roof was unsafe. *Held,* that defendant was not negligent as charged, and that plaintiff could not recover.

From Warrick Circuit Court; *E. M. Swan,* Judge.

Action by Clara Bracken against the J. Wooley Coal Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller,* for appellant.

*T. W. Lindsey* and *C. J. Lindsey,* for appellee.

COMSTOCK, J.—Appellee, plaintiff below, as the widow of Elijah Bracken, deceased, prosecuted this action against appellant to recover damages for negligently causing the death of her husband in appellant's coal mine.

The cause was put at issue by general denial. There was a trial by a jury and a verdict rendered in favor of appellee for $300. With the general verdict the jury returned answers to interrogatories. The court overruled appellant's motion for judgment notwithstanding the general verdict, and rendered judgment on the general verdict in favor of appellee. These rulings are specified as errors.

The complaint is under the statute concerning the operation of coal mines. It alleges, in substance, that her husband, Elijah Bracken, died in Warrick county, Indiana, on the 16th day of April, 1901, leaving her as his widow; that she was dependent upon decedent for support; that for months prior to his death her husband was in the employ of the defendant, and was injured while so employed on the 15th day of April, 1901; that defendant was engaged in mining coal in Warrick county, Indiana, and was a corporation organized and doing business under the laws of Indiana; that it was defendant's duty to employ a competent mining boss, and it was his duty to visit working places in defendant's mine on each alternate day and see that the safety of miners was assured; that it was the duty of the defendant and the mining boss properly to prop and timber working places so that safety was assured; that defendant employed more than ten men in its mine, and was operating a mine with engine, hoisting apparatus, cable, and other appliances; that the mine was underground, and had entries and rooms in which men worked; that it was defendant's duty to prop and timber the roof of these rooms and to prevent them from caving in; that the mine had been operated many years, and the room where plaintiff was injured had become old, and the roof rotten and dangerous; that the coal had been removed from this room, except pillars and walls between the rooms; that the deceased did not know that the part of the mine where he was injured was unsafe; that on the day deceased was injured defendant ordered him

to go into the room where he was injured, to make side cuts and remove the pillars and walls of coal; that he entered this room in pursuance of orders and began to remove coal; that it was the duty of the mining boss to have at the working place a sufficient supply of props and timbers; that in a short time, and while exercising due care, the roof above where deceased was at work fell upon him, inflicting injuries from which he died; that the mining boss had neglected to visit this working place and examine it before sending decedent there to work, and had failed properly to prop and timber it; that defendant was guilty of negligence in violating §7472 Burns 1901, §5480m Horner 1901, in that the mining boss had not visited and examined the place where decedent was at work for more than two days prior to his injury, and had allowed the mine at that point to become and remain unsafe; that miners were at work there all of the week before; that this room was not properly propped and timbered; that props were ten or twelve feet apart, and were small posts without caps; that the rotten and heavy slate mashed down over the tops of the posts and large pieces fell between them; that the defendant and the mining boss neglected to place in the mine, and at this working place, sufficient props and timbers to insure the safety of the working place, and to place timbers over said room from one post to another leaving large areas of slate unsupported; that the defendant and the mining boss neglected to have at this mining place any props or timbers whatever; that the mining boss neglected to visit and examine the roof where decedent was at work for one week prior to his injury, while miners were at work there all the time; that decedent did not know when he went to work there that the roof was unsafe; that the defects were latent and not apparent to the naked eye, and such as the decedent could not reasonably discover; that decedent was injured by defendant's negligence and violation of the

statute without his fault, to plaintiff's damage in the sum of $10,000.

Stated generally, the verdict must prevail against the facts specially found, unless the conflict between the two is irreconcilable. If any fact essential to sustain the general verdict is found not to exist, the general verdict falls.

In cases of this kind it is essential to recovery that an injury has been received; that the negligence of the defendant was the proximate cause of such injury. Upon failure to establish either of these essential facts, the consideration of other questions, which may be involved, becomes unnecessary. The death of appellee's decedent in appellant's coal mine is not questioned.

Whether the trial court erred in overruling appellant's motion for judgment is to be determined from an examination of the complaint and the interrogatories and answers thereto. It is contended by appellant that it affirmatively appears from the interrogatories and answers thereto that appellant was not negligent.

To each of the following questions: "(1) Did the defendant, by its superintendent, order the decedent Elijah Bracken to go to room ten on the 15th day of April, 1901, and make side cuts therein? (1½) Was the deceased at work in room ten, when he received the accident, with the consent of the defendant?" "(8) Was the room number ten at the point where the decedent received his injuries, properly propped and timbered, so that the safety of the mine was assured?" "(21) Did William Wooley, the superintendent of the defendant's mine when the accident occurred, and on the morning of the accident, and before the men went to work, order Bracken to go to what is known as the twenty-five degree entry and take up bottom coal, which was in another room from room ten?" "(22) Did Bracken obey these instructions?"—the jury answered, "In doubt." To question: "(4) Was the decedent in the line of duty as a servant of defendant when he

received the injuries?"—the answer is, "Doubtful." For the consideration of this cause we will hold that these answers do not contradict the general verdict.

Does it affirmatively appear from the answers to other interrogatories that appellant was free from the negligence charged? As already stated, the complaint charges that the appellant was guilty of negligence in violation of §7472 Burns 1901, §5480m Horner 1901. Said section is as follows: "That the mining boss shall visit and examine every working place in the mine, at least, every alternate day while the miners of such place are, or should be, at work and shall examine and see that each and every working place is properly secured by props or timber and that safety of the mine is assured." And when found unsafe he shall order and direct that no person shall be permitted in an unsafe place, unless it be for the purpose of making it safe. "He shall see that a sufficient supply of props and timbers are always on hand at the miner's working place. He shall also see that all loose coal, slate and rock overhead wherein miners have to travel to and from their work are carefully secured."

It is charged that it was the duty of appellant to employ a competent mine boss, and it was his duty to visit working places in defendant's mine on each alternate day and see that the safety of the miners was assured. It appears from the answer to interrogatory number twenty-four, requested by appellants, that the mine boss held a certificate at the time issued by State authority; that the accident occurred on Monday, April 15, 1901, and that he visited room ten on the Saturday before the accident. It is also shown by answer to interrogatory nine, requested by the plaintiff, that the defendant's mining boss within two working days before the date of the injury visited and examined room ten at the point where decedent received his injury.

It is charged that it was the duty of the defendant

and the mine boss properly to prop and timber working. places so that safety was assured; that it was the duty of defendant to prop and timber the roof of the rooms of the mine to prevent them from caving in. It is found in answer to interrogatory nine and one-half of the series requested by plaintiff, and twenty-five and twenty-five and one-half of those requested by appellant, that there were props and timbers not in use in room ten at the time of the accident, and there was one within twelve feet of the place of the accident that could have been used; that on the morning of the accident, and for several months prior thereto, the defendant had a sufficient supply of props on hand within a few feet of the opening of the room for the purpose of propping said room, and they were always furnished when called for by the men.

The charge that this mine was not properly timbered, that the props were ten or twelve feet apart, is answered in response to question nineteen; that the two posts on the right-hand side of the room number ten, on the morning of the accident, immediately opposite where the decedent was sitting, were five feet and seven inches apart; and in answer to interrogatory twenty, requested by the plaintiff, the row of posts on the left-hand side of room ten, and the row on the right-hand side of room ten, where the slate broke that killed the decedent, were three or four feet apart.

In answer to interrogatory twelve, requested by plaintiff, it is found that the defendant at the time of the accident, did not know and could not have known by the examination of that place, that the roof of the room at the point where the decedent was injured was in a dangerous or unsafe condition.

The averment that the room where the decedent worked had a roof that had become old, rotten, and dangerous, is met by the answer to interrogatory thirteen, requested by defendant, which shows that the face of the coal, or the end

of the room furthest from the entry, had only reached the place of the accident thirty days before it occurred. From other findings it appears that at the time of the accident the face of the coal, or end of the room, had been carried beyond the point where decedent was injured, and he was then engaged in widening or making what is called a side cut. It is the duty of the operator to have props in the room ready for use. On alternate days the mining boss observes and gives directions. In the interval between his visits, and as the work of mining progresses and conditions change, the changes are under the immediate observation of the miner, and the setting of the props and how many shall be set are with him. In finding that the appellant, at the time of the accident, did not know, and could not have known by examination, that the roof of the room at the point where the decedent was injured was in a dangerous and unsafe condition, the jury found that appellant was not negligent, unless the operator is an insurer of the safety of the miner.

The statute under which this action is brought requires of the employer certain specific measures to be taken to provide for the safety of the employe; the particular means named must be used. The statute does not make the employer the insurer of the safety of the workmen, but a failure to comply with its requirements is negligence.

The pleader is held to the facts alleged, and if it appears from the evidence or the findings that the acts of negligence charged are not sustained there can be no recovery. The findings before us show that appellant was not negligent as charged.

Questions of assumption of risk and contributory negligence are discussed in the briefs of the adversary counsel, and recent decisions cited of the Supreme and of this Court in which these questions are discussed in connection with the mining statute here involved. The conclusion reached renders it unnecessary to refer to them.

The judgment is reversed, with instructions to the trial court to sustain appellant's motion for judgment on the answers to interrogatories.